ODUS E. LUNDRY and EMILY LUNDRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lundry v. Commissioner
Docket No. 15434-83.
United States Tax Court
T.C. Memo 1986-456; 1986 Tax Ct. Memo LEXIS 152; 52 T.C.M. (CCH) 578; T.C.M. (RIA) 86456; September 18, 1986. Terence K. Heaney, for the petitioners. James P. Clancy, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency in petitioners' 1979 Federal income tax in the amount of $3,482, and an addition to tax pursuant to section 6653(b) [1] in the amount of $1,741. After concession, the issues for decision are (1) whether any part of petitioners' underpayment of tax is due to fraud and (2) whether petitioners are liable for self-employment tax. [2]
*153 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Odus E. (Gene) Lundry and Emily Lundry, husband and wife, resided in Horsham, Pennsylvania, at the time they filed their petition. Gene, who has a high school education, was employed in 1979 by the Fischer and Porter Company as a machinist; Emily was not employed. Gene was informed by friends of his son that his tax liability could be reduced by assigning his income to a family trust and by having the trust pay certain of his family's personal expenses. In May, 1978, he met with Gordon Buttorff who promoted nationally sales of such trusts through Constitutional Trust Associates. Shortly thereafter, Gene executed documents creating a "Constitutional Pure Equity Trust", operating under the name "Lundry Family Trust." On several occasions, petitioners arranged for Buttorff to stay in their home, where he conducted meetings for the purpose of persuading others to create similar trusts. Gene's fellow employees at Fischer and Porter Company attended such meetings, as did petitioners' neighbors. [3]
*154 In order to insure that little or no taxes would be withheld, Gene filed W-4 forms with his employer on May 24, 1978 and December 5, 1979, in which he claimed 27 and 16 withholding exemptions, respectively. Accordingly, only $1,393 of tax was withheld from his 1978 income of $22,044, and only 19 cents was withheld from his 1979 wages of $18,929. Petitioners' 1978 joint return and the return for the Lundry Family Trust (Form 1041) were prepared by Aaron Liggett, an accountant who prepared the tax returns of many of those individuals using Constitutional Pure Equity Trusts. Petitioners' 1978 tax return reflected a loss of $16,434 from the Lundry Family Trust. In July, 1979, Liggett sent petitioners a letter stating that the desired tax results could not be accomplished through their trust as structured and that he would therefore be unable to prepare future Form 1041 returns based on the then existing trust documents. Buttorff wrote petitioners shortly thereafter, advising them to ignore Liggett's letter and assuring them that their Constitutional Pure Equity Trust was "valid" and that only minor restructuring changes were needed. Gene was due a $3,100 consulting fee in 1979 *155 with regard to his consulting and assisting others to create a Constitutional Pure Equity Trust. The consulting fee due in 1979 was paid as follows: $1,500 in 1981 and $500 in 1982. The balance ($1,100) was never received. Petitioners prepared their own 1979 return in which a deduction was claimed for a loss from the family trust in the amount of $17,764; the $3,100 consulting fee, although not received in 1979, was reported as income in the return. The return showed an overpayment of taxes for the 19 cents withheld. Petitioners also prepared the Form 1041 for their trust for 1979. In May, 1981, respondent sent petitioners a notice of a deficiency in the amount of $251 for 1979 self-employment tax in connection with the reported $3,100 consulting fee. After receiving this notice, petitioners filed an amended 1979 return in which they deleted the $3,100 from income and from the loss allegedly generated by the trust. Their net tax overpayment, according to the amended return, remained the same (i.e., 19 cents). On May 1, 1981, Gene filed with his employer a Form W-4 in which he claimed 25 withholding exemptions. Petitioners' 1978 and 1979 tax returns were audited. On March 10, 1982, Gene *156 filed another Form W-4 in which he claimed 17 exemptions. Prior to filing these forms, respondent's agent advised Gene that he was entitled to no more than five withholding allowances. Throughout the tax audit, petitioners were uncooperative. They continually refused to meet with respondent's agent or produce any records for inspection. Respondent sent petitioners a second notice of deficiency for 1979, dated April 12, 1983, which gave rise to this proceeding. In that notice of deficiency, respondent disallowed the claimed 1979 deduction of $17,764 for losses from the Lundry Family Trust, reasserted that petitioners were liable for self-employment tax in the amount of $251, and determined that the resulting underpayment of tax was due to fraud. Petitioners concede that they are not entitled to the claimed $17,764 deduction, but they dispute respondent's determination with respect to the addition for fraud. [4]
OPINION To support his claim of fraud, respondent has the burden of proving, by clear and convincing evidence, that petitioners fraudulently underpaid their 1979 income tax. Section 7454(a); Rule 142(b); ; *157 . Respondent may prove fraud if he shows that petitioners intended to evade taxes which they knew or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. ; , affg. a Memorandum Opinion of this Court; . The existence of fraud is a question of fact to be resolved upon consideration of the entire record. , affd. without published opinion . Fraud is never presumed ( , but it may be proven by circumstantial evidence, since direct proof of the taxpayer's intent is often not available. A taxpayer's entire course of conduct can be relied on to establish the requisite fraudulent intent. ; . The conduct *158 of taxpayers during years succeeding the year in issue may cast light upon their intent during the year in issue. , affg. a Memorandum Opinion of this Court; . In the case of a joint return, the addition for fraud does not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse. Section 6653(b)(4). Respondent presented evidence of fraud only with respect to Gene. Emily did not testify in this case, and the only evidence pertaining to her is that she signed the family trust documents and the joint return. After carefully observing Gene during his testimony and after considering his testimony and all other evidence in this case, we are convinced that he pursued a course of conduct with an intent to avoid the payment of taxes properly due. Gene's use of a family trust as a conduit to deduct personal expenses, his assistance in promoting the trust in order to evade taxes, his continued filing of false W-4's despite the warning of respondent's agent, his failure to cooperate during the course *159 of the audit of his return, his failure to heed the warning of the trust promotor's own accountant (Mr. Liggett) that the trust was invalid for its designed purpose to avoid the payment of taxes, all convince us of Gene's willful intent to conceal, mislead and avoid the proper payment of his 1979 tax liability. Therefore, respondent's determination of fraud with respect to him is sustained. Respondent's determination of fraud with respect to Emily is not sustained. The evidence in this case establishes that Gene did not receive any self-employment income. (e.g., consulting fees) in 1979; therefore, petitioners are not liable for the self-employment tax. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and as in effect during 1979. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioners neither conceded nor did they or respondent address on brief whether they are liable for self-employment tax. However, we deem as a justiciable issue, and shall decide, whether petitioners are liable for self-employment tax.↩
3. Petitioners were the first individuals in the Horsham area to purchase family trust materials from Constitutional Trust Associates. As renumeration for allowing their home to be used to promote the sale of the trust materials, petitioners were to receive a gold krugerrand for each person present who purchased a set of trust materials.↩
4. See footnote 2.↩